# HOMER C. TUCKER
## v.
# CURTIS CADY.

*Sales—Action to Recover Price of Corn—Storage.*

In an action to recover the price of certain corn which the plaintiff had
delivered to the defendant, it is *held:* That the finding of the court below
that the corn was not put into the defendant's warehouse on storage, is
sustained by the evidence; and that, if the corn was sold without any
agreement as to the price, the ruling price at the time of delivery would
govern.

[Opinion filed January 7, 1888.]

APPEAL from the Circuit Court of Cook County; the Hon.
T. M. SHAW, Judge, presiding.

Messrs. CRATTY BROTHERS and FULLER & GALLUP, for ap-
pellant.

Messrs. STARR & STARR, for appellee.

LACEY, J. The appellee, on the last days of October and
first days of November, 1882, delivered to appellant 1,138 $\frac{3}{6}\frac{2}{6}$
bushels of corn in his elevator at Brimfield. This suit was
brought by appellee to recover the price of the corn. A jury
was waived, and the cause tried by the court, which found in
favor of the appellee, and rendered judgment against appel-
lant for the sum of $683.10, the price of the corn at 60 cents
per bushel. To reverse that judgment this appeal is taken.
There is no question of law involved. The judgment of the
court below is sought to be reversed solely on the grounds
that the finding of the Circuit Court was against the weight
of the evidence. The controversy is solely over the price
that was to be paid for the corn. The contention of the appel-
lee is that he sold the corn at the market price at the time of
delivery, which was 60 cents per bushel; that of appellant

Tucker v. Cady.

that "he was to store the corn until the first of January next following, free of charge, and was to pay the market price whenever the appellee demanded his money." The appellant also contends that the appellee demanded his pay about the middle of December following, when corn had dropped to 45 cents per bushel, which price he then offered him, but which appellee refused. The dispute, then, is about the difference of 15 cents per bushel on the price of the corn. The evidence rests on the testimony of the appellee and appellant, and one Burt, who partially corroborates the testimony of appellant.

The appellee testified that a day or two before the delivery of the corn he met appellant and asked him what he was paying for corn, "and he said 60 cents; or he said I could take 10 cents off the Chicago price at any time. I told him I did not want any of that; that I had enough of that already; that was all there was said about it to my knowledge."

While this testimony does not show that the appellee expressly agreed to take 60 cents per bushel for the corn, it shows that it was not his intention to store it on the terms contended for by appellant. It showed rather that it was his intention to take the market price of the corn when delivered, and that at the time of the conversation no bargain was struck at any price. On cross-examination appellee testified that he told appellant he would not have any storage; that he did not know that appellant had any stored; no storage was ever mentioned.

The appellant testified in his own behalf that appellee said he wanted to deliver his corn. "I told him we would take it in and store it free until January 1st." "He said he would put it in and wait for 60 cents. That is all there was said, and the corn came in." He further testified that appellee, "when he wanted his pay in December, wanted 60 cents, the market price of the corn when it was put in. I never agreed to pay him 60 cents."

On cross-examination he further testifies: "I think Cady asked me market price that we were paying for corn at the time he came to deliver it. I told him the price was 60

cents. I may have said that he could take his pay at any time, 10 cents less than the Chicago market. I suppose we talked that way. He may have said that he would have nothing to do with the Chicago market; I don't know. I have never yet agreed with him on the market price. I shipped the corn right out. It is a private elevator."

There appears to be a conflict of evidence between the appellee and appellant as to whether the former said he would put his corn in on storage. The former swears he did not and that no storage was mentioned and that he did not know that others were storing with appellant. It appears a little strange that appellee should have said at the time of the conversation, in regard to delivering the corn, that he would put it in and wait for 60 cents when it was 60 cents at that time, and the appellant so informed him. There must have been some mistake about that statement, and as this is the only statement referring to the agreement of appellee to put the corn in on storage, claimed by appellant, we think the court below was justified in discrediting it.

While the appellant swears that he took the corn of Purcell and others, amounting to 14,000 bushels, free of storage till the first of January, and was to pay the market price whenever they demanded their money, and that he said to appellee at the time he called for his pay, in December, that he made the same kind of a bargain with him, yet he does not testify that anything of the kind was mentioned by either himself or the appellee in their conversation concerning the delivery of the grain or at any other time, and he purported to give the entire conversation. That the appellant took the corn in on the same terms as he did that of Purcell and others, seems to be only an inference of the appellant for the support of which he does not point to any conversation between him and appellee that would justify it.

It may be and probably is true, that appellant did not agree in so many words to pay, or the appellee did not accept expressly 60 cents per bushel for the corn at the time of the admitted conversation between them, but if the corn was not put in on storage, which the court was justified in finding it

Tucker v. Cady.

was not, and sold without any bargain as to price, then the ruling price, 60 cents, at the time of the delivery, would govern. The law would regulate the price. It may be that the minds of the parties did not meet on the terms on which the corn was received, whether on storage or sale, yet if it was delivered and the appellant sold and converted it to his own use, and the market price at the time was 60 cents per bushel, then the law would raise an implied promise on the part of appellant to pay the then market price for the corn.

The court below may have taken this view of the case, giving each party credit for honesty as to what he understood the terms of the contract of delivery to be. We do not think that Burt, the appellant's witness, was at all justified in his inferences as to what the contract was, derived from the conversation between appellant and appellee in December, from what was said.

What appellee admitted is not inconsistent with his testimony, although he may not have put his right to receive 60 cents per bushel for his corn on the best grounds.

We need not discuss the question as to what the rights of the parties would be if the appellee deposited his grain on general storage in appellant's private warehouse, and instead of its being held the corn was shipped out immediately and no equivalent amount retained in the elevator to meet the deposit when demanded, or any other legal question of a like nature. No law question of this kind is raised by asking the court to hold the law, and only a question of fact is presented. If the finding can be supported on the evidence on any theory it should stand.

We are of the opinion that the court was fully justified in its finding, and therefore affirm the judgment.

*Judgment affirmed.*